BERGER, J.
 

 The plaintiff city of Hartford has filed the present action seeking to vacate an arbitration award rendered by the state board of mediation and arbitration (board) in favor of the defendant Local 1716, Council 4, AFSCME, AFL-CIO. Specifically, the plaintiff complains about the procedural and substantive aspects of a May 21, 1992 decision that held that the plaintiff did not discharge its employee, Michael Leonka, for just cause.
 

 According to the board’s findings, Leonka had been employed by the plaintiff for approximately twenty-two
 
 *315
 
 years and, at the time of his discharge, was a recreation leader in the parks and recreation department. On September 2, 1987, Leonka apparently injured his foot in a work-related accident and was reassigned by the plaintiff to a desk job. He was absent from work for the alleged purpose of attending therapy sessions throughout 1988 and January, 1989. His physician had certified him to return to work on December 15, 1988, and his workers’ compensation benefits ceased on that date. Leonka’s records show that from December 16, 1988, to January 23, 1989, he was absent 155 hours and he indicated to his supervisor that those hours were chargeable to workers’ compensation. An investigation conducted by the plaintiff revealed, in part, that on numerous occasions during 1988, Leonka claimed he was going to therapy when, in fact, he did not. In May, 1989, the plaintiff began deducting earned sick time and, at a meeting on January 12,1990, the parties agreed that $1200 was still owed by Leonka to the plaintiff. Several meetings were held by the parties to discuss Leonka’s status and, on February 20, 1990, a formal grievance procedure was held, which resulted in Leonka’s discharge, effective March 9, 1990. As a result of a procedural notice difficulty, a second hearing was held, and Leonka was discharged again on March 30, 1990, effective April 2, 1990.
 

 Formal proceedings commenced before the board to determine whether Leonka had been terminated for just cause. A three member arbitration panel was appointed consisting of Frank J. Avallone, labor representative, John M. Romanow, management representative, and Blanca E. Torres, chairperson and public member. Hearings were held on June 8, September 10, October 26, and November 26, 1990. On or about September 21, 1991, Romanow received a copy of the arbitration award from Torres. This document (first award) was signed by Torres but not by Avallone. Romanow signed
 
 *316
 
 the award but attached a dissenting opinion essentially arguing that since the time of the filing of the briefs on December 13, 1990, to the time of the issuance of the award, the chairperson had never convened the panel, thereby denying, at least the management member, any participation in the deliberation process. After contact by Romanow, the board administrator, Cathy Serino, directed the panel members to convene an executive session. A session was held on October 22, 1991, and on May 21,1992, a second award was issued. Romanow again filed a dissenting opinion claiming that the second award was procured by undue means, violated public policy, was untimely, exceeded the submission and was essentially improper. The plaintiff then brought this action to vacate the second award.
 

 As noted by both sides, “[arbitration is a contractual remedy designed to expedite, in an informal context, the resolution of disputes”;
 
 Board of Education
 
 v.
 
 Waterbury Teachers Assn.,
 
 168 Conn. 54, 62, 357 A.2d 466 (1975); and “ [arbitration is favored by courts as a means of settling differences . . . .”
 
 Wolf v. Gould,
 
 10 Conn. App. 292, 296, 522 A.2d 1240 (1987). It is, therefore, the established policy of the courts that “[e]very reasonable presumption and intendment will be made in favor of the award . . . .”
 
 Milford Employees Assn.
 
 v.
 
 Milford,
 
 179 Conn. 678, 683, 427 A.2d 859 (1980). “Courts favor arbitration . . . and arbitration awards are generally upheld except where an award clearly falls within the proscriptions of § 52-418 of the General Statutes.”
 
 Board of Education
 
 v.
 
 Bridgeport Education Assn.,
 
 173 Conn. 287, 290, 377 A.2d 323 (1977).
 

 General Statutes § 52-418 provides in pertinent part: “Vacating award, (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in
 
 *317
 
 session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. ...”
 

 The panel is required to follow its regulations. Section 31-91-45 of the Regulations of Connecticut State Agencies provides in pertinent part: “(a) As promptly as possible after the date of the formal hearing and the receipt of the briefs, where the parties elect to submit briefs, the panel members will meet in an executive panel session to decide the matter submitted. . . . (c) Decisions shall be made by majority vote of the panel members. A panel member may express his disapproval of the majority decision by adding the word ‘dissenting’ after his signature on the award, or, said panel member may also prepare a dissenting opinion which shall be sent to the board’s office and shall be made part of the award proper.”
 

 The plaintiff argues that the first award was issued by the chairperson without consulting with the other members of the panel in a duly called executive session. In other words, the plaintiff complains that instead of meeting, discussing the issues of the case and voting, the chaiiperson simply wrote and issued the opinion herself.
 

 
 *318
 
 This court agrees that the panel did not comply with subsection (a) requiring an executive session and subsection (c) requiring that “ [decisions shall be made by majority vote of the panel members.” The undisputed evidence indicates that Torres never consulted with the other members before issuing the award. No executive session was held; no discussion took place; no vote was taken.
 

 It can be argued, of course, that the first award was nothing more than a draft decision proposed by its chairperson. After receiving the request of Romanow dated September 23,1991, however, the board administrator ordered the panel to hold its required executive session stating that a decision issued in violation of state agency regulation § 31-91-45 was invalid. This court does not believe that the first award was ever intended to be simply a draft decision. There is nothing in the evidence that would support that conclusion and, of course, an executive session was never held or scheduled to discuss such a draft decision. Nevertheless, as the first award was invalidated, this court must examine the second award and its relationship to the first award.
 

 As indicated, the panel held an executive session on October 22, 1991. According to Avallone, the meeting “was not a pleasant one” although he testified that Torres held no ill feelings toward Romanow. He indicated that he and Romanow stated their respective positions but that the panel did not take a vote. Seven months after the meeting on May 21,1991, Torres issued the second award. This award was signed by Avallone as well as by Torres; Romanow also signed it but again issued a dissenting opinion. The plaintiff argues that the second award was tainted by the prior proceedings; it posits that the substantive changes between the two decisions evidences a misconduct that requires that the award be set aside. In the first award, Torres stated that “[t]he Panel has concluded that [Leonka] reported
 
 *319
 
 false information to his employer. . . . The only remaining issue is the penalty for the offense.” While Torres rejected the penalty of termination, she stated that “[t]he Panel does not intend to reward [Leonka] with a windfall, however. His conduct was inexcusable and he merits discipline. Reinstatement without back pay will serve as a sufficiently harsh punishment under the circumstances.”
 

 The second decision, on the other hand, while finding that “ [t]he record supports the conclusion that [Leonka] engaged in conduct which clearly warrants discipline” ordered reinstatement with full back pay to March 9, 1990.
 

 This court agrees with the plaintiffs position that the award should be set aside. As previously mentioned, this court does not believe that the first award was meant to be a draft decision. Obviously, if it were only a draft, the panel would certainly be free to change its mind and issue a completely opposite decision. In the present case, however, the very essence of the deliberation process was thwarted when, without any debate or discussion, Torres simply issued her decisions. Having been reprimanded by the board administrator — the first decision being declared invalid — she convened an executive session. The evidence indicated that Avallone and Romanow stated their respective positions but there was no discussion among the panel members about an appropriate penalty or remedy, if any, for the acts of either party. No vote was taken.
 

 The problem in the present case is that the chairperson excluded the remaining members of the three member panel from the deliberation process. Her actions are accentuated by the 180 degree reversal in reinstating the grievant with back pay after being ordered to convene the meeting. This was done even though she still found that his conduct warranted discipline. In
 
 O&G/
 
 
 *320
 

 O’Connell Joint Venture
 
 v.
 
 Chase Family Ltd. Partnership No. 3,
 
 203 Conn. 133,146-47, 523 A.2d 1271 (1987), our Supreme Court stated: “The concept of arbitral ‘misconduct’ does not lend itself to a precise definition but is, instead, best illustrated by example. See generally A. Rothstein, ‘Vacation of Awards for Fraud, Bias, Misconduct and Partiality,’ 10 Vand. L. Rev. 813 (1957). Among the actions that have been found to constitute such misconduct on the part of an arbitrator as would warrant vacating an arbitration award are the following . . . holding hearings or conducting deliberations in the absence of a member of an arbitration panel, or rendering an award without consulting a panel member; see
 
 Continental Bank Supply Co.
 
 v.
 
 International Brotherhood of Bookbinders,
 
 239 Mo. App. 1247, 1258, 201 S.W.2d 531 (1947)
 

 In
 
 Continental Bank Supply Co.
 
 v.
 
 International Brotherhood of Bookbinders,
 
 supra, 239 Mo. App. 1258, the court held that one arbitrator (“third” arbitrator who had been selected by other two) could not, with certain exceptions not relevant to the present case, refuse to allow his associates to take part in the proceedings. The court held that the submission was to three arbitrators and not simply to just one. Hence, an award by one was not in conformance with the submission. Id.; accord
 
 Harmuth Engineering Co.
 
 v.
 
 Franklin Universal Building Corp.,
 
 178 N.J. Super. 380, 429 A.2d 378 (1981). The regulations governing the present case also required that “the panel members . . . meet ... to decide the matter submitted.” Regs., Conn. State Agencies § 31-91-45.
 

 In
 
 Goeller
 
 v.
 
 Liberty Mutual Ins. Co.,
 
 523 Pa. 541, 545-46, 568 A.2d 176 (1990), where a neutral arbitrator issued an award by himself without consulting the other two arbitrators and where one arbitrator protested, the court held that “[wjhen an arbitrator, properly appointed and entitled to act, is denied access to the
 
 *321
 
 deliberations of the other arbitrators, their decision is not a decision. It matters not whose arbitrator he or she may be. What is important is that all view points must at least be heard. Each must be entitled to the opportunity to persuade the others, be permitted to dissent and to maintain his voice in the decision.” A similar' decision was reach in
 
 Yocom
 
 v.
 
 Carpenter,
 
 353 N.W.2d 435, 436 (Iowa App. 1984). In
 
 West Towns Bus Co.
 
 v.
 
 Division 241,
 
 26 Ill. App. 2d 398, 409, 168 N.E.2d 473 (1960), the court stated that “[i]t is the rule that all arbitrators must act and act together. ... All must be present, or shall be given an opportunity to be present, at each and every meeting, equally, whether the meeting be for the hearing of evidence, arguments of the parties, or for consultation or determination of the award. This is so, even when it is stated in the agreement of submission that a majority award shall be valid.” (Citation omitted.) See also
 
 State
 
 v.
 
 Bakke,
 
 117 N.W.2d 689, 695 (N.D. 1962).
 

 This court is aware that in
 
 Metropolitan District Commission
 
 v.
 
 AFSCME, Council 4, Local 184,
 
 37 Conn. App. 1, 6-7, 654 A.2d 384 (1995), aff'd, 237 Conn. 117, 676 A.2d 825 (1996), our Appellate Court reversed a trial court decision that vacated an arbitration award on the ground that the panel did not hold three way discussions pursuant to state agency regulations § 31-91-45 (a). In that case, however, the Appellate Court stressed that no evidence of prejudice was presented to the trial court and thus the trial court had no basis for its finding. Id. Such is not the situation in the present case as it is clear from a review of the second award that despite a finding that Leonka had “engaged in conduct that clearly warrants discipline,” the “panel” reversed its prior finding and ordered a reinstatement with back pay. As previously mentioned, this was accomplished without discussion and after a six month hiatus between the executive session and the issuance
 
 *322
 
 of the second award. There was no testimony that the panel members ever discussed this reversal or the new award. This surely prejudices the plaintiff and thus, this court believes that
 
 Metropolitan District Commission
 
 is not on point. Accordingly, as the underlying integrity of the arbitration process has been tainted by both the first decision and the subsequent reversal (without any discussion or vote) in the second decision, the decision cannot stand.
 
 O&G/O’Connell Joint Venture
 
 v.
 
 Chase Family Ltd. Partnership No. 3,
 
 supra, 203 Conn. 133.
 

 The plaintiff also claims that the panel failed to comply with General Statutes § 31-98, which requires that a written opinion be issued within fifteen days. While the briefs were filed in the present case on December 13, 1990, the award was not issued until May 21, 1992, approximately seventeen months later.
 
 [1]
 
 As noted by the plaintiff in its memorandum, the hearings lasted only three days and there were only eighteen exhibits. While our Supreme Court has stated that the fifteen day requirement is only directory and not mandatory;
 
 International Brotherhood of Teamsters
 
 v.
 
 Shapiro,
 
 138 Conn. 57, 67, 82 A.2d 345 (1951);
 
 [2]
 
 seventeen months is clearly far beyond fifteen days. It cannot be deemed reasonable under any of the circumstances of the present case. The defendant’s proposition that the plaintiff “did not seek a time line” and, therefore, “should be estopped from asserting the award is untimely” simply
 
 *323
 
 does not hold up where there is a delay as long as the one in the present case. As noted earlier, the arbitration process is favored, in part, because it promotes a prompt and equitable settlement of disputes.
 
 United Steelworkers
 
 v.
 
 Enterprise Corp.,
 
 363 U.S. 593, 596, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960);
 
 Wolf v. Gould,
 
 supra, 10 Conn. App. 296. No party should have to seek a “time limitation” to receive a decision within a reasonable time.
 

 The plaintiff has argued additionally that the award should also be vacated on substantive grounds; namely, that the plaintiff was entitled to determine what type of disciplinary action should be imposed. As a result of the court’s conclusion that the award should be vacated, it need not address this issue.
 

 This court concludes that the arbitral process has violated both the letter and spirit of the board’s regulations. These deviations can certainly be deemed to fall within “other action[s] by which the rights of any party have been prejudiced”; General Statutes § 52-418 (a) (3) ; and constitute such an imperfect exercise of power “that a mutual, final and definite award upon the subject matter was not made.” General Statutes § 52-418 (a) (4) . All parties are entitled to have their matter heard and decided by all members of a designated panel. Additionally, they are entitled to have a decision within the statutory time, or, at least, a reasonable time. Anything less does not conform with our laws. For the reasons set forth above, therefore, the award is vacated.
 

 [1]
 

 Judges of the Superior Court are, of course, required to render a decision within four months of the completion of a trial. General Statutes § 51-183b and Practice Book § 211A require Superior Court judges and judge trial referees to render a decision on short calendar matters within 120 days from the date of submission.
 

 [2]
 

 In
 
 AFSCME
 
 v.
 
 New Britain,
 
 206 Conn. 465, 468, 538 A.2d 1022 (1988), our Supreme Court declined to rule on the timeliness of an arbitration award finding that the appellant waived the issue by failing to raise it prior to the issuance of the award. Such is not the case here as the affidavits of both H. Maria Cone, former deputy corporation counsel of the city of Hartford, and Serino, director, state board of mediation and arbitration, indicate.